UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

R & D VILLAGE SQUARE, LLC,

        Plaintiff,                                Case No. 1:07-CV-317

v.                                                   HON. JANET T. NEFF

MURK'S VILLAGE MARKET, INC.,

        Defendant.
_____/

**OPINION**

Plaintiff, R & D Village Square, LLC ("R & D"), has sued Defendant, Murk's Village Market, Inc. ("Murk"), in this diversity action, alleging two state law claims for breach of contract/lease and a claim seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Now before the Court is Murk's motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).[1] For the following reasons, the motion is denied.

**Background**

According to R & D's Second Amended Complaint, R & D is the successor to the landlord's interest and Murk is the successor to the tenant's interest under a commercial lease entered into on December 1, 1994, covering a building, real property, and the non-exclusive use of certain common areas within the Village Square Shopping Center in Three Rivers, Michigan (the "Village Market Lease"). R & D further alleges that R & D and Murk are successors in interest to another lease entered into on June 5, 1998, and extended by various renewals over the years, covering certain real

---

[1] This matter was originally assigned to the Honorable Gordon J. Quist but was subsequently transferred to the undersigned pursuant to Administrative Order No. 07-091, filed August 10, 2007.

property and the non-exclusive use of certain common areas, also in the Village Square Shopping Center (the "Video Village Lease"). Both leases provide that the tenant is responsible for paying a pro-rata portion of the Common Area Maintenance ("CAM") costs and that the tenant shall pay all real estate taxes and other similar charges against the premises.

R & D alleges that Murk owes it certain amounts under the leases for CAM and property taxes for which it has demanded payment and Murk has refused to pay. On February 9, 2007, R & D sent a letter demanding payment of these allegedly past due charges in the total amount of $65,644.04. (Letter from Klingensmith to Murk of 2/9/07, 1st Am. Compl. Ex. C.) Murk says that it refused to pay the amount demanded for several reasons, including that it provided many of the disputed services covered by the CAM charges itself. (Def.'s Br. Supp. at 3.)

R & D filed its Complaint on March 27, 2007 and filed a First Amended Complaint on April 16, 2007, after the Court noted a jurisdictional defect.[2] On May 3, 2007, Murk filed the instant Motion to Dismiss, arguing that the Court lacks jurisdiction because R & D has failed to meet its burden of proving that the amount in controversy exceeds $75,000, exclusive of costs and interest. Subsequently, R & D moved for leave to file an amended complaint based upon additional damages that it alleged it incurred since the filing of the original Complaint which, together with the amount previously demanded, total $97,412.665. Murk filed a response, objecting to the proposed amended complaint on the ground that R & D sought to file its amended pleading solely in order to avoid

---

[2]On April 5, 2007, Judge Quist entered an order requiring R & D to file an amended complaint setting forth the residency of each of its members. Because R & D is a limited liability company, it has the citizenship of each of its members. In its original Complaint, however, R & D erroneously sought to establish diversity pursuant to 28 U.S.C. § 1332(c)(1) by alleging its state of creation and principal place of business, as if it were a corporation. R & D's First Amended Complaint, filed on April 16, 2007 in response to the April 5, 2007 Order, amended the original pleading only to specify the residency of its members.

dismissal for failing to meet the jurisdictional threshold. Murk further noted that because jurisdiction must be assessed at the time of filing, it would be improper to allow the proposed amendment. The magistrate judge granted R & D's motion, although he noted in his order that the amendment was without prejudice to Murk's right to assert that the Second Amended Complaint does not cure the alleged jurisdictional defect.

## Motion Standard

In order to fall within a federal court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, the claim must "exceed[] the sum or value of $75,000, exclusive of interest and costs." A plaintiff's allegation in its complaint that the amount in controversy exceeds the jurisdictional threshold will be deemed to satisfy the jurisdictional requirement, unless it appears to a legal certainty that the plaintiff cannot, in good faith, claim the jurisdictional amount. *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). The party asserting federal jurisdiction has the burden of proving that the amount in controversy requirement has been met. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). The amount in controversy must be examined as of the time the complaint was filed to determine whether the statutory amount is satisfied. *Klepper*, 916 F.2d at 340.

## Discussion

Murk raises two arguments in support of its contention that R & D has failed to establish that the jurisdictional threshold is met in this case. First, it contends that the amount in controversy, as set forth in the letter from R & D's counsel to Murk attached as Exhibit C to the Complaint and First Amended Complaint, is only $65,644.04. R & D responds that it has met its burden because it alleged in its Complaint and First Amended Complaint that, in addition to the CAM charges and real property taxes owing under the leases, it is entitled to recover the attorneys fees that it incurs in

3

connection with Murk's defaults under the Village Market Lease. The parties dispute whether the Sixth Circuit permits contractual attorneys fees to be considered as part of the calculation of the amount in controversy.

Second, Murk argues that the Court should decline to exercise its discretion to entertain R & D's claim for declaratory relief because such a claim serves no useful purpose and because R & D has asserted the claim solely as a means to circumvent the amount in controversy requirement. R & D responds that it has not alleged a declaratory judgment claim for an improper purpose and that the Court should exercise its discretion because a declaratory judgment would provide guidance to the parties in their future dealings under the leases with respect to Murk's CAM and tax obligations.

**A. Inclusion of Contractual Attorney's Fees**

R & D contends that, although the amounts it has demanded under the leases total only $65,644.04, it may rely upon an award of attorney's fees to establish that the amount in controversy exceeds $75,000, exclusive of interest and costs. In particular, R & D points out that § 17 of the Village Market Lease provides that "[i]n the Event of Default by Tenant, Landlord shall have all remedies that may be provided by law including the right to recover from Tenant all damages it may incur by reason of such default including. . . reasonable attorneys fees . . . ." As noted above, the parties dispute the propriety of including contractual-based attorney's fees as part of the calculation of the amount in controversy. R & D contends that the Sixth Circuit allows both contractual and statutorily-based fees to be included, while Murk contends that only fees awarded pursuant to statute can satisfy the jurisdictional amount.

The Sixth Circuit's most recent decision on the issue is *Williamson v. Aetna Life Insurance Co.*, 481 F.3d 369 (6th Cir. 2007). There, the plaintiffs filed suit in state court alleging claims for breach of contract and violations of the Tennessee Consumer Protection Act and the Tennessee "bad faith" statute, arising from the defendant's improper refusal to pay the plaintiffs' medical claims under a group health insurance plan. The plaintiffs alleged damages in their complaint of less than $75,000, and the defendant removed the case to federal court on the basis of diversity jurisdiction. Plaintiffs moved to remand on the ground that the amount-in-controversy requirement was not satisfied. The district court denied the motion and, later, granted summary judgment to the defendant.

On appeal, the Sixth Circuit first considered the jurisdictional issue. Declining to address the plaintiffs' argument that their stipulation to not seek more than $75,000 necessitated remand, the panel observed that the plaintiffs' "request for attorneys' fees properly placed this case within the purview of federal jurisdiction." *Id.* at 376. In particular, the panel wrote:

> As a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows payment of such fees. *Clark v. Nat. Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975) ("It is settled that the statutory penalty and a statutory attorney's fee can be considered in determining whether the jurisdictional amount is met."). [*Id.*]

Because both Tennessee statutes provided for an award of attorney's fees, it was more likely than not that the potential cost of the claim to the defendant would exceed $75,000. *Id.* at 377.

R & D contends that *Williamson* constitutes binding authority for the proposition that attorneys fees provided by contract are included in the amount in controversy. Murk, on the other hand, contends that *Williamson*'s statement regarding contractual attorneys fees is *dicta* because *Williamson* concerned only statutory, not contractual, attorneys fees. Murk further notes, correctly,

5

that *Clark*, cited by *Williamson* in the quotation set forth above, involved only a statutory attorneys' fee. Thus, Murk argues, the rule in the Sixth Circuit is that a court may consider only statutory attorneys fees in determining the amount in controversy.

Murk fails to offer any persuasive reason to distinguish between statutory and contractual attorneys fees for purposes of determining the amount in controversy. Murk argues that applying the *Williamson* rule to contractual attorneys fees would be burdensome because the district court would be required to conduct an in-depth examination of the facts of the case in order to determine whether state law would permit an award of fees under those facts, thus "setting up what would amount to a case within a case just to determine whether there is actually an entitlement under state law to the particular contract-based attorney fees which are being claimed." (Def.'s Reply Br. at 4-5.)

However, Murk's position runs counter to the rule in a majority of circuits that contractual attorneys fees may be included as part of amount in controversy. *See, e.g.*, *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979) (stating that fees provided by contract and by statute are "two logical exceptions" to the general rule that attorneys fees are excludable in determining the amount in controversy); *Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981) ("In determining whether attorney's fees should be included in calculating the amount in controversy for purposes of 28 U.S.C. §§ 1331 and 1332, courts have consistently held that although attorney's fees are generally not included, attorney's fees should be included where they are provided for by contract or statute."); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract."); *Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001) (stating that a party

may include a reasonable estimate of attorney's fees in calculating the amount in controversy where such fees are authorized by statute or contract). Murk cites no authority or persuasive reasoning to reject this majority rule.

Although an unreported decision, *Public Funding Corp. v. Lawrence County Fiscal Court*, No. 89-5486, 1989 WL 153970 (6th Cir. Dec. 21, 1989) (per curiam), is directly on point and shows, consistent with *Williamson*, that the Sixth Circuit adheres to the majority rule. The plaintiff in *Public Funding* brought a breach of contract claim against the defendant, alleging breach of a telephone system lease. In its complaint, the plaintiff sought a total of $10,725.88 in compensatory and consequential damages, attorney fees as provided for by the lease, and an unspecified amount of punitive damages. The amount sought included $6,325.19 still owed on the lease and consequential damages. The district court concluded that the amount in controversy was less than the then-existing jurisdictional threshold of $10,000 because the plaintiff could not recover punitive damages, consequential damages were too speculative, and, although the request for attorney fees was deemed a legitimate consideration in determining the amount in controversy, the court concluded that an attorney fee of $3,675 (the amount needed to reach $10,000) would not be reasonable as a matter of law because it was more than half of the amount due under the lease.

The Sixth Circuit reversed, concluding that it was not unreasonable to assume that the plaintiff would incur fees exceeding more than half the amount due under the lease. The Sixth Circuit explained:

> Applying [the legal certainty] test, we do not believe that it can be stated to a "legal certainty" that in a case still in its pretrial state an attorney fee to be paid at the end of the case, which is roughly equivalent to half the damages, is *per se* unreasonable. This is true particularly if the dollar amounts are small. A fee of $500,000 to collect damages of one million dollars might be unreasonable, whereas an attorney may well justify a fee of $500 to collect $100 if a client chooses to retain him to pursue such a small amount. It must be remembered here that no one challenges the good faith nature of this claim. Furthermore, there is evidence in the

7

> record which indicates that the defendants were figuratively thumbing their noses at plaintiff based upon the defendants' perception that defendants would have a decided "home-field" advantage if this case went into court. The arbitrariness of a party in refusing to honor a claim may well have a bearing on another party's decision to pursue the claim even if pursuit of the claim may turn out to be expensive when compared to the potential damage recovery. [*Id.* at *2.]

Thus, the Sixth Circuit unquestionably accepted the proposition that attorney fees arising from a contract may be considered in assessing the amount in controversy.

In this case, Murk does not dispute that Michigan courts recognize that attorney fees provided by contract are recoverable as an element of damages. *See Fleet Business Credit, LLC v. Krapohl Ford Lincoln Mercury Co.*, 274 MICH. APP. 584, 589; 735 N.W.2d 644 (2007). In accordance with *Public Funding Corp.*, *supra*, it is reasonable to assume that R & D will incur at least $9,355.96 in fees through the conclusion of this case. In fact, Daniel Katz, R & D's Managing Member, states in his affidavit that R & D incurred $5,696.25 in fees as of the date it filed its complaint and $12,213.75 in fees as of the date it filed its response to Murk's motion. (Katz Aff. ¶ 9.) Katz further estimates that R & D may incur an additional $30,000 in fees through the filing of dispositive motions. (*Id.* ¶ 10.) Given Murk's steadfast denial of its liability for the amounts claimed by R & D, and in light of Murk's active defense of this case, as illustrated by the instant motion, Katz' estimate is entirely reasonable, even though it may be assumed that R & D will not be entitled to recover the full amount of fees it estimates it will incur because it is only entitled to fees in connection with defaults under the Village Market Lease.

Murk raises two additional arguments, neither of which requires significant discussion. First, it contends that because the attorney fee provision at issue allows fees only if there is a default, R & D's entitlement to fees cannot be considered in the amount in controversy because it is contingent upon a factual showing (a default by Murk) that cannot be made at this time. This argument lacks

merit because the sole issue common to R & D's claim for CAM and property tax charges and its claim for attorney fees is whether there is a default under the lease. If so, R & D will prevail on its claims for amounts due under the Village Market Lease and for attorney fees because attorney fees are part of the damages that necessarily flow from the default. Murk's denial of a default thus does not preclude this Court from considering R & D's claim for attorney fees.[3]

Second, Murk contends that this Court would have to consider a conflict in the Michigan Court of Appeals regarding whether contract-based attorney fees are special damages for purposes of Michigan Court Rule 2.112(I). Murk contends that under applicable Michigan Court of Appeals precedent, attorney fees in this case are special damages that the Court should not consider in determining the amount in controversy because R & D has not pled attorney fees as special damages.

Even if the sufficiency of R & D's pleadings were relevant to the determination of the amount in controversy, which the Court finds it is not, Murk's argument fails because "[t]he Federal Rules of Civil Procedure . . . control pleading in diversity cases." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006). Thus, the Court need not delve into a conflict in state court decisions. Here, the applicable rule is Rule 9(g), which states that items of special damage "shall be specifically stated." FED. R. CIV. P. 9(g). Claims for attorney fees under a contract are in the nature of special damages. *American Casualty Co. v. City of Detroit* (*In re American Casualty Co.*), 851 F.2d 794, 802 (6th Cir. 1988). "In the absence of allegations that the pleader is entitled to

---

[3]Murk's reliance on *Torres v. State Farm Mutual Automobile Ins. Co.*, 478 F. Supp. 2d 924 (E.D. Mich. 2004), is misplaced. There, the court held that it could not consider the possibility that the plaintiff might recover attorney fees under Michigan's No-Fault Act because even if the plaintiff prevailed on her claim for damages, the court would have to decide whether the defendant acted unreasonably in failing to make payments to the plaintiff, which would require some speculation by the court in determining the amount in controversy. *Id.* at 927. Here, for the reasons set forth above, no speculation is required.

9

attorney's fees . . . such fees cannot be awarded." *Id.* (quoting *Maidmore Realty Co. v. Maidmore Realty Co.*, 474 F.2d 840, 843 (3d Cir. 1973)).  R & D's Complaint and First Amended Complaint sufficiently comport with Rule 9(g)'s requirements.  That is, the First Amended Complaint specifically quotes the provision of the Village Market Lease giving rise to its claim for attorney fees and requests attorney fees pursuant to that lease.  (1st Am. Compl. ¶¶ 16, 20, 37.)  Murk cannot credibly claim that it is unaware of the claim for attorney fees.

### B.  Propriety of Declaratory Relief

The analysis set forth above dispenses with Murk's primary argument that the Court should decline to exercise jurisdiction over the declaratory judgment claim because it is an end-run around the amount in controversy requirement.  Nonetheless, because Murk contends that a declaratory judgment action is unnecessary, the Court should still consider whether it is appropriate to exercise its discretion to hear the claim.

A district court may decide, in its sound discretion, to entertain an action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a).  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  In *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), the Sixth Circuit discussed the following general considerations that should guide a district court in determining whether a declaratory ruling is appropriate:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed. [*Id.* at 326 (quoting E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941))]

The Sixth Circuit further distilled the analysis into five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. [*Id.*]

On consideration of these factors, the Court concludes that it is appropriate to exercise its discretion in favor of jurisdiction over the declaratory judgment claim. First, even though R & D also asserts breach of contract claims, a declaratory judgment regarding the parties' rights and obligations for CAM charges and property taxes under the leases, including the proper calculation of those amounts, will settle the controversy and serve a useful purpose by providing guidance to the parties going forward. Second, as mentioned above, R & D is not using the declaratory judgment remedy for an improper purpose, such as to avoid the amount in controversy requirement, as Murk alleges. Third, there is no indication that a declaratory judgment would increase friction between federal and state courts, especially in light of the fact that the Court will already be deciding the state law breach of contract claims. Finally, although a breach of contract claim is an alternative remedy, each remedy provides somewhat different relief. The declaratory judgment claim will provide guidance to the parties in their future dealings under the leases, while the breach of contract action is limited to deciding whether a default exists under the current set of facts.

## **Conclusion**

For the foregoing reasons, the Motion to Dismiss is DENIED.

An Order consistent with this Opinion will be entered.


Dated: November 13, 2007              /s/ Janet T. Neff
                                      JANET T. NEFF
                                      UNITED STATES DISTRICT JUDGE